UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN H.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>                                    Defendant. | Case No.:  3:19-cv-2177-JM-LL<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 16, 19]** |

Plaintiff Benjamin H. brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for disability insurance benefits. Before this Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. [ECF Nos. 16, 19].

This Report and Recommendation is submitted to United States District Judge Jeffrey T. Miller pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment be **DENIED,** and the case be remanded for further proceedings.

## I.      PROCEDURAL BACKGROUND

On October 20, 2015, Plaintiff applied for Title II disability insurance benefits, alleging disability beginning on September 18, 2014. See Administrative Record ("AR") at ECF No. 14 at 122-128.  Plaintiff's claim was initially denied on January 7, 2016, and upon reconsideration on March 15, 2016, which resulted in Plaintiff's request for an administrative hearing.  AR at 61-74.  Plaintiff requested the administrative hearing on April 27, 2016. Id. at 98-99. On February 21, 2018, an administrative hearing was held before Administrative Law Judge ("ALJ") Howard K. Treblin.  Id. at 45-60.  Plaintiff, appearing without an attorney, testified at the hearing.  Id. at 47-60. An impartial vocational expert, Ms. Nelly Katsel, was also present and testified.  Id.  In a written decision dated September 20, 2018, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 18, 2014, through the date of the ALJ's decision. Id. at 19-39.  The ALJ's decision became final on September 12, 2019, when the Appeals Council denied Plaintiff's request for review of the ALJ's ruling. Id. at 2-5. On November 18, 2019, the Appeals Council noted in written correspondence to Plaintiff's attorney Jonathan Omar Pena that it had received additional evidence which it included in Plaintiff's record. Id. at 6. The additional evidence included Plaintiff's November 16, 2018 request for review of the hearing decision, and Plaintiff's January 6, 2019 correspondence requesting additional time to submit more evidence. Id. at 7-17.

On November 14, 2019, Plaintiff, represented by his attorney Mr. Pena, filed this instant action seeking judicial review by the federal district court. See ECF 1.  On May 26, 2020, Plaintiff filed a Motion for Summary Judgment alleging that the ALJ rejected the opinion of the consultative psychiatric examiner "without setting forth specific, legitimate reasons that are supported by substantial evidence in the record."  ECF No. 16 at 3 (hereinafter "Pl.'s Mot.").  Plaintiff also asserts that the "ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's physical limitations, and failed to offer clear and convincing reasons for discounting his subjective complaints." Id. In Defendant's Cross-Motion for Summary Judgment and Opposition to

Plaintiff's Motion for Summary Judgment, Defendant asserts that "the ALJ properly weighed the medical-opinion evidence" and that the ALJ "properly weighed Plaintiff's subjective allegations." ECF No. 19 at 2, 8 (hereinafter "Def.'s Mot."). Defendant additionally asserts that if this Court overturns the ALJ's decision that the proper remedy is to remand Plaintiff's claim to the agency. Id. at 11-12.

## II.   DISABILITY HEARING

On February 21, 2018, Plaintiff, not represented by counsel, appeared at the hearing before the ALJ. See AR at 47. During the hearing, the ALJ questioned Plaintiff regarding his work experience and alleged disability. Id. at 47-61. Plaintiff testified that he was aware that he could have a lawyer or a representative to help him but indicated that he wanted to proceed with the hearing. Id. at 47-48. Plaintiff testified that he was thirty-seven years old and that he graduated from college with a BFA. Id. at 48. He stated that his last gainful employment was as a Production Manager at New Deal Distillery in 2014. Id. at 49. Plaintiff described that he had left this job when his pain became unbearable because he believed "he couldn't do his job well." Id.

The ALJ then asked Plaintiff a series of questions about the headaches that Plaintiff alleged. First, the ALJ questioned whether Plaintiff was having headaches daily. Id. at 49-50. Plaintiff said "yeah." Id.  Next, the ALJ questioned the intensity of the headaches and whether Plaintiff spent time in a dark, quiet room. Id. Plaintiff answered that his headaches were incapacitating and that he spends time in such a room approximately three days a week. Id. at 49-50. He also described that during his migraines he would wear sunglasses and play the television at the lowest volume. Id. at 50.

The ALJ next asked Plaintiff a series of questions about fibromyalgia and neuropathic pain. Id. at 49. Plaintiff testified that he has fibromyalgia, neuropathic pain and some psychiatric diagnoses which he takes prescription strength medicine to treat. Id. at 50.  When the ALJ asked whether the medicine helped, Plaintiff responded that the pills, which he can only take once a week, "help take the edge off," but do not get rid of his pain.

Id. at 50-51.  Plaintiff indicated that the only side effects that he experiences from the medicine are sedation and dizziness. Id. at 51.

Next, the ALJ questioned Plaintiff regarding his financial support and his home life. Id. Plaintiff testified that he is supported by his mother and that he lives in her house with his brother. Id. at 51-52. Plaintiff stated that he receives food stamps and MediCal, but no cash assistance. Id. at 52. Regarding his home life, the ALJ asked what a typical day looked like for Plaintiff. Id. Plaintiff stated that he does yoga and walks, but is limited due to his fibromyalgia flare ups. Id. at 52-53. Plaintiff additionally testified that he experiences fibromyalgia pain every day, and that he has noticed short term memory deficits. Id. at 53. The ALJ then questioned Plaintiff regarding his social interaction and Plaintiff answered that he does not have a social life besides interactions with his family. Id. at 54. Next, the ALJ questioned Plaintiff regarding his participation in household chores. Id. Plaintiff testified that he cooks for himself and does light chores, such as wiping down the counters. Id. Plaintiff testified that his mom often helps him do the dishes. Id.

The ALJ then questioned Plaintiff regarding the frequency of his doctors' visits. Id. Plaintiff testified that he is required to have an appointment every six months for his pain management, but has visited his primary care every three months. Id. at 55. Additionally, Plaintiff described that he sees medical specialists at a minimum of "once every three months." Id.

Next, the ALJ questioned the vocational expert, Ms. Katsel. Id. The ALJ asked Ms. Katsel to identify Plaintiff's past work. Id. She categorized Plaintiff's work as a distillery worker as "svp two, heavy." Id. Ms. Katsel categorized Plaintiff's prior work before he was a distillery worker as a salesperson of general merchandise as "svp three, light." Id. Ms. Katsel categorized Plaintiff's job as a barista as "svp two, medium." Id. at 56-57. The ALJ presented Ms. Katsel with a hypothetical of "someone with the claimant's age, education, past work, who can lift and carry 20 pounds on occasion, 10 pounds frequently, sit/stand/walk for six hours each, simple repetitive tasks, nonpublic occasional coworker contact, can past work [of a distillery worker] be performed?" Id. at 58. Ms. Katsel said

"No." Id. When asked about his other work [salesperson of general merchandise] with the same hypothetical, Ms. Katsel said "Yeah, svp two, light." Id. Ms. Katsel provided some examples of jobs of "svp two, light" as "office helper," "garment sorter." Id. Next, the ALJ asked the vocational expert about a new hypothetical of an individual with "the same age, education, past work," but "an individual who cannot sustain a 40-hour work week on a regular and continuing basis, will need excess rest breaks throughout the work day, is not able to understand, remember, carry out even simple tasks on a sustained basis." Id. Ms. Katsel said no work can be performed by that hypothetical individual.

## III.   SUMMARY OF THE ALJ'S DECISION

On September 20, 2018, the ALJ issued a written decision in which he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 18, 2014, through the date of the ALJ's decision. AR at 40. The ALJ proceeded to follow the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 18, 2014, the alleged onset date. AR at 24.

At step two, the ALJ found that Plaintiff had the following severe impairments: "migraine headaches; fibromyalgia; degenerative disc disease of the lumbar spine; posttraumatic stress disorder; paranoid disorder; anxiety; and depression." Id. at 25.

At step three, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that met or medically equaled one of the impairments as defined in 20 CFR Part 404. Id.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in the Commissioner's regulations, subject to certain non-exertional limitations. AR at 27-28. Specifically, the ALJ found:

> [He can] perform light work as defined in 20 CFR 404.1567(b) except: he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand and walk for six hours each; and he is limited to simple repetitive tasks that are non-public with occasional coworker contact.

Id.

At step four, the ALJ found that Plaintiff, based on his limitation to less than the full range of light work, was unable to perform his past relevant work as a distillery worker, salesperson of general merchandise, or a coffee maker. Id. at 38-39. For purposes of his step five determination, the ALJ adduced and accepted the vocational expert's testimony that a hypothetical person with Plaintiff's vocational profile could make a successful adjustment to other work that existed in significant numbers in the national economy. Id. at 39-40.  Namely, Plaintiff could work as an office helper, a retail marker, or a garment sorter. Id. Accordingly, the ALJ found that Plaintiff was not disabled. Id.

## IV.  **ISSUES IN DISPUTE**

Plaintiff raises the following two issues in his Motion, which will be discussed in more detail in the Discussion section below.

(1) The ALJ erred by rejecting the opinion from the consultative psychiatric examiner, Dr. Bhavsar, without setting forth specific, legitimate reasons that are supported by substantial evidence in the record.
(2) The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's physical limitations, and failed to offer clear and convincing reasons for discounting his subjective complaints.

Pl.'s Mot. at 3.

## V.  **STANDARD OF REVIEW**

The Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). It is evidence that a "reasonable mind might accept as adequate to support a conclusion." Id. In determining whether the ALJ's findings are supported by substantial evidence, the court

3:19-cv-2177-JM-LL

"must consider the entire record as a whole, and may not affirm simply by isolating a specific quantum of supporting evidence." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). When the evidence may be reasonably construed to support more than one rational interpretation, the court must uphold the ALJ's decision. <u>Thomas</u>, 278 F.3d at 954. Further, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014). Additionally, the court may not reverse the ALJ's decision on account of a harmless error. <u>Molina v. Astrue</u>, 674 F.3d 1104, 111 (9th Cir. 2012). The burden of proving harmless error falls upon the party attacking the agency's determination. <u>Id.</u>

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. <u>Id.</u>

## VI.   <u>DISCUSSION</u>

### 1.   <u>Evaluation of the Medical Evidence Including the Opinion of Dr. Bhavsar</u>

#### a.   <u>Summary of Parties' Arguments</u>

Plaintiff argues that the ALJ "failed to follow the regulations when he rejected the opined limitations from the consultative psychiatric examiner without setting forth specific, legitimate reasons that are supported by substantial evidence in the record." Pl.'s Mot. at 17. Plaintiff's first argument in support thereof is that the ALJ "vaguely cit[ed] to the record as a whole for the relevant period," rather than citing to specific entries in the medical record. <u>Id.</u> at 18. Second, Plaintiff argues that the ALJ impermissibly weighed only Plaintiff's benign mental findings, and ignored Plaintiff's longstanding history of PTSD, anxiety, and depression. <u>Id.</u> at 18-19. Third, Plaintiff argues that "the record as a whole contains objective evidence and documentation of persistent psychiatric symptoms" and the ALJ's "vague reference to the record as a whole as 'inconsistent' with Dr. Bhavsar's opinion is not a specific, legitimate reason to discount his professional assessment." <u>Id.</u> at 19. Fourth, Plaintiff argues that the ALJ committed a legal error in concluding that Dr.

Bhavsar's findings "support no more than moderate limitations" because the ALJ did not explain how he came to this conclusion. Id. at 20 (citing AR at 37).

Defendant argues that the ALJ properly weighed the medical-opinion evidence. Def.'s Mot. at 3. Defendant's first argument in support thereof is that the ALJ properly found Dr. Joshua J. Boyd's, Psy.D., and Dr. Ben G. Kessler's, Psy.D., "opinions best comported with the weight of the evidence." Id. at 4. Second, Defendant argues that Plaintiff "failed [to] allege reversible error because he did not show Dr. Bhavsar's opinion conflicted with the RFC." Id. (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). Third, "[a]s to the medical evidence, the ALJ properly found that while Plaintiff's mental-status examinations supported significant functional limitations, they also revealed a residual range of functioning consistent with Plaintiff's restrictive RFC." Id. at 5. Fourth, Defendant claims that in connection with Plaintiff's treatment history, "the ALJ properly found that the sporadic and conservative nature of Plaintiff's mental-health treatment supported the reduced level of functioning set forth in his RFC." Id. at 6. Accordingly, Defendant argues that Plaintiff does not establish reversible error. Id. at 8.

### b. Relevant Law

In evaluating medical opinions, the regulations distinguish among three categories of physicians: (1) treating physicians; (2) examining physicians, who examine, but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. 20 C.F.R. § 404.1527(c); (e)[1]; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also 20 C.F.R. § 404.1527(d)(2). A contradicted opinion of a treating or examining

---

[1] The Social Security Administration issued new regulations effective March 27, 2017. Unless otherwise stated, all regulations cited in this decision are effective for cases filed prior to March 27, 2017.

physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830.

### c. Analysis

Plaintiff asserts that the ALJ erred in rejecting the opinion from examining physician, Dr. Bhavsar, a state agency psychiatrist, who opined that Plaintiff is "severely limited" as set forth below:

> The claimant's ability to follow simple oral and written instructions was moderately limited. His ability to follow detailed instructions was severely limited. His ability to interact with the public, coworkers and supervisor[s] was severely limited. The claimant's ability to comply with job rules, such as safety and attendance, was severely limited. His ability to respond to changes in a routine work setting was severely limited. His ability to respond to work pressure in a[n] usual working setting was severely limited. His daily activities were mildly limited.

AR at 513. The ALJ stated that he "assigned little weight to the opinion of Dr. Bhavsar because his opinion is inconsistent with the objective medical evidence." AR at 38. The ALJ summarized his review of Dr. Bhavsar's evaluation of Plaintiff as follows:

> [O]n July 24, 2018, Madhumalti Bhavsar, M.D., [b]oard eligible in psychiatry, conducted a consultative psychiatric evaluation of the claimant (Ex. 8F). The claimant's chief complaints were posttraumatic stress disorder (PTSD), anxiety, situational depression, and panic attacks. . . . Based on the examination, Dr. Bhavsar diagnosed the claimant with: schizophrenia, in partial remission; PTSD; and generalized anxiety disorder. . . . Dr. Bhavsar opined the claimant has the following functional limitations: moderately limited in the ability to follow simple oral and written instructions; severely limited in the ability to follow detailed instructions; severely limited in the ability to interact with the public, coworkers, and supervisors; severely limited in the ability to comply with job rules, such as safety and attendance; severely limited in the ability to respond to changes in a routine work setting; severely limited in the ability to respond to work pressure in a usual work setting; and mildly limited in his daily activities (8F, pp. 6-10).
>
> The undersigned has considered but gives little weight to the opinion of Dr. Madhumalti Bhavsar, a consultative psychiatric examiner (Ex. 8F). Dr. Bhavsar opined the claimant's mental impairments result in moderate to severe or marked functional mental limitations (Ex. 8F, pp. 6-10). However,

upon review of the medical evidence of record, the undersigned [finds] [sic] no positive objective, persistent psychiatric, psychological, or mental status examination findings nor regular and consistent mental health treatment supporting the severity of mental limitations assessed by Dr. Bhavsar (see Exhs. 3F-6F).  Further, Dr. Bhavsar's opinion is inconsistent with his own mental status findings, which at best support no more than moderate limitations (Ex 8F, pp. 4-5). The undersigned therefore assigns little weight to the opinion of Dr. Bhavsar because his opinion is inconsistent with the medical evidence.

AR at 37-38.

Dr. Bhavsar's opinion was contradicted by Drs. Boyd and Kessler, who opined that Plaintiff has no more than moderate functional limitations. Id. at 65-86. Drs. Boyd and Kessler were both non-examining physicians and did not examine nor treat the claimant. Id. The ALJ stated that he "assign[ed] significant weight to the opinions of Dr. Boyd and Dr. Kessler because their opinions are reasonable and consistent with the evidence of record as a whole." Id. at 37.  The ALJ summarized his review of Drs. Boyd and Kessler as follows:

With regard to the medical opinions regarding the claimant's mental residual functional capacity, Joshua J. Boyd, Psy.D., the State agency mental medical consultant on initial review (Ex. 2A), and Ben G. Kessler, Psy.D., the State agency mental medical consultant at the reconsideration level (Ex. 4A), opined the claimant has the following functional limitations: mild restriction with activities of daily living, moderate difficulties in maintaining social functioning; moderate decompensation (Exs. 2A, 4A). More specifically, Dr. Boyd and Dr. Kessler opined the claimant has the following mental residual functional capacity: he is limited from more complex and detailed instructions, but his impairments would still allow for the claimant to understand, remember, remember [sic] and carry out simple short, repetitive instructions; he is limited from all public contact and is capable of occasional coworker contact; and he is limited to work environment that would be free from constant changes (Exs. 2A, 4A).

Id. at 36. Accordingly, the ALJ was required to identify specific and legitimate reasons supported by substantial evidence in the record to reject the limitations set forth by Dr. Bhavsar. Lester, 81 F.3d at 830.

/ / /

1

                                  i.   The ALJ's Conclusory Findings

2

      After reviewing the record and the arguments of the parties, the Court finds that the

3

ALJ failed to provide specific and legitimate reasons supported by substantial evidence in

4

the record for discounting the opinion of Dr. Bhavsar. As an initial matter, the ALJ

5

considered only some evidence in the record to support his rejection of Dr. Bhavsar's

6

medical opinion of a more restrictive functional limitation, while ignoring evidence in the

7

record that supports the more restrictive finding. See Holohan, 246 F.3d at 1207-08

8

(holding that an ALJ cannot selectively rely on some entries in plaintiff's records while

9

ignoring others). The ALJ did not provide specific and legitimate reasons for discounting

10

evidence in Plaintiff's medical records that support his lengthy history of PTSD, anxiety

11

and depression, which was noted as a contributing factor to his chronic pain syndromes.

12

      For example, on February 10, 2014, Plaintiff saw Dr. John Garofalo and was

13

diagnosed with Posttraumatic Stress Disorder. AR at 272. Dr. Garofalo noted that Plaintiff

14

presented "with persistent pain with psychological comorbidity in the form of PTSD and

15

unspecified depression. . . . The presence of PTSD seems to be playing a significant role

16

in the manifestation and expression of chronic pain. Id. at 272. Dr. Garofalo further noted

17

that "[o]verall, the patient presents as genuinely distressed by his pain." Id. at 275.

18

Similarly, one year later, on February 16, 2015, Plaintiff had a consultation with Dr. Cara

19

Lee Rozell, D.O., for his migraines. Id. at 299. Dr. Rozell noted that Plaintiff had a "stable

20

headache pattern" and that his "level of head pain is related to his level of body and back

21

pain, and that is also complicated by a history of PTSD." Id. Dr. Rozell further noted that

22

"he also suffers from depression, which he feels is situational, i.e., related to his degree of

23

pain and incapacitation." Id. Dr. Rozell noted in her assessment that "[t]he patient has a

24

complex pain history, including chronic migraine, migraine without aura, chronic

25

nonmalignant body and back pain, PTSD, insomnia." Id. at 302.

26

      On December 2, 2015, Vivian Coles, LPC, MA, wrote a letter explaining that she

27

has treated Plaintiff for psychotherapy beginning on September 1, 2012 to the present. Id.

28

at 350. She noted that Plaintiff's symptoms have included "migraines, nightmares, feeling

negative about the future, isolating from people, having problems at work, along with chronic back pain." Id. She further stated that "[h]e's also had passive suicidal thoughts on and off the past two years, we've discussed safety planning and he seems committed to staying alive." Id.  Ms. Coles discussed the various treatment regimens that Plaintiff had tried and noted that "[h]e has been an active participant in therapy and has attended regularly." Id. On December 12, 2016, Plaintiff had a treatment intervention with Sheila Baghbeh, MFT for a psychiatric therapy visit, who noted that Plaintiff had a "depressed mood, sadness, decreased sleep and decreased energy/fatigue." Id. at 410. In her progress notes, Ms. Baghbeh, MFT stated that Plaintiff had a "severe" impairment in participating in usual social/community activities and a "severe" "impairment in performing work/school tasks." Id. at 413. Plaintiff continued to establish care with and seek treatment from various medical specialists from 2016 through 2018 in connection with his lengthy history of PTSD, anxiety and depression, which was often noted as a contributing factor to his chronic pain syndromes. See, e.g., AR at 389-90; AR at 396; AR at 403; AR at 409-10; AR at 421-22; AR at 430; AR at 440; AR at 444; AR at 451; AR at 454; AR at 482-83; AR at 489; AR at 491.

These findings were later corroborated by Dr. Bhavsar, who reviewed Plaintiff's available medical records and performed a complete psychiatric evaluation on Plaintiff on July 24, 2018. Id. at 508-517. Dr. Bhavsar found that Plaintiff's diagnoses were "schizophrenia, in partial remission; posttraumatic stress disorder and generalized anxiety disorder." Id. at 512. Dr. Bhavsar further opined that Plaintiff's was "severely limited" in specified areas of his functionality as set forth above. Dr. Bhavsar also completed a medical source statement in which he noted that Plaintiff had "marked" limitations due to PTSD, recent psychosis and severe anxiety. Id. at 515-517.

The  ALJ failed to consider or discuss the evidence as set forth above from Plaintiff's medical records that supported his lengthy history of PTSD, anxiety and depression, which were noted as contributing factors to his chronic pain syndromes. Instead, the ALJ merely concluded that "upon review of the medical evidence of record, the undersigned [finds]

[sic] no positive, objective persistent psychiatric, psychological, or mental status examination findings nor regular and consistent mental health treatment supporting the severity of mental limitations assessed by Dr. Bhavsar (see Exs. 3F-6F)." Id. at 38. The ALJ failed to identify any objective evidence or clinical findings that contradicted the limitations by Dr. Bhavsar and offered only his conclusion that the limitations were not consistent with other evidence. This is not sufficient to carry the burden in evaluating the evidence or addressing a conflict in the record. See, e.g., Reddick v. Charter, 157 F.3d 715, 722 (9th Cir. 1998). ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); see also Garrison, 759 F.3d at 1012-13 ("An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").  Here, the ALJ failed to identify what he believed to be the discrepancy between Dr. Bhavsar's mental status findings and the objective medical evidence.

ii.   The ALJ's Citations to Exhibits 3F-6F

Second, the Court agrees with Plaintiff that the ALJ did not meet his burden of providing specific and legitimate reasons supported by substantial evidence to discount the opinion of Dr. Bhavsar by citing generally to Plaintiff's medical records at exhibits 3F-6F. AR at 38. The ALJ was required to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957; see also Reddick, 157 F.3d at 725. "Broad and vague reasons do not suffice." Klee v. Berryhill, 2018 WL 3956337, at *13 (N.D. Cal. Aug. 17, 2018) (internal citation and quotation omitted).

Defendant's argument that the ALJ "provided specific pin-point citations to the medical evidence supporting his findings" is unpersuasive. Def.'s Mot. at 4.  Although the ALJ cited to some specific page numbers within Exhibits 3F-6F, the citations were not sufficiently specific to support the ALJ's conclusion. AR at 25-26. The ALJ vaguely

concluded that "although the claimant was briefly hospitalized in January 2018 (Ex. 6F, pp. 84-110), mental status findings were generally unremarkable during the period at issue, other than guarded behavior and mild depressive mood, which was reported only intermittently (Exs. 3F, pp. 43-45; 5F, p. 15; 6F, pp. 42, 62, 69-71, 74-76, 110-113, 121-124)." AR at 25-26. Notably, many of the records to which the ALJ cites also include positive findings related to Plaintiff's allegations. For example, in Exhibit 3F, pages 43 to 45, which the ALJ cites, the ALJ failed to address that Dr. Bilbao's progress notes from Plaintiff's appointment on August 24, 2015 stated that Plaintiff was "requesting medicine for social anxiety and PTSD related nightmares." Id. at 305-307. Similarly, in Exhibit 5F, on page 15, Dr. Bilbao noted in Plaintiff's November 4, 2015 progress notes that Plaintiff has "chronic pain, chronic headaches, [and] PTSD." Id. at 364-365. Dr. Bilbao also stated that Plaintiff is having "possible panic attacks." Id. Specifically, she stated that Plaintiff "[i]s having episodes of shakiness, pounding heartbeat, tunnel vision, [and] lightheadedness." Id. These findings are absent from the ALJ's discussion of Plaintiff's medical records, and contradict the ALJ's conclusion that Plaintiff had mental status findings that were "generally unremarkable" during the period at issue. An ALJ may not consider evidence that supports the non-disability determination, while disregarding evidence that supports the contradictory opinion from a physician. See, e.g., Holohan, 246 F.3d at 1207; see also Reddick, 157 F.3d at 722-23 (finding that an ALJ may not "cherry-pick" from a record to support the conclusion, but rather must account for the context of the whole record). The Court finds that the ALJ did not adequately identify the examination findings upon which his decision was based to discount the findings of Dr. Bhavsar's opinion. Accordingly, the Court is unable to conclude whether the ALJ correctly weighed Dr. Bhavsar's opinion.

### iii.   The ALJ's Rejection of Dr. Bhavsar's "Severely Limited" Finding Of Plaintiff

Third, the Court finds that the ALJ committed a legal error in concluding that Dr. Bhavsar's findings "support no more than moderate limitations" because the ALJ did not

explain how he came to this conclusion. AR at 37. Dr. Bhavsar explicitly found that Plaintiff was "severely limited" in his ability to: (1) follow detailed instructions; (2) interact with the public, coworkers, and supervisor; (3) comply with job rules, such as safety and attendance; (4) respond to changes in a routine work setting; and (5) respond to work pressure in a usual work setting. Id. at 513. Dr. Bhavsar relied on the available objective medical evidence in the record and his examination of Plaintiff to make his assessment of Plaintiff. The ALJ fails to explain how Dr. Bhavsar's explicit findings of Plaintiff's "severely limited" functionality in certain areas supports the ALJ's conclusion of "moderate limitations." Once again, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to discredit the explicit finding of Dr. Bhavsar.

> d. <u>Conclusion</u>

For the reasons stated herein, the ALJ erred in evaluating the opinion of Dr. Bhavsar. The ALJ failed to meet his burden to provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the limitations identified by Dr. Bhavsar. <u>See</u> <u>Lester</u>, 81 F.3d at 831. The ALJ's error in evaluating the limitations impacted the findings at step two related to the severity of Plaintiff's mental impairments, given the conclusions from Dr. Bhavsar regarding Plaintiff's ability to interact with the public, follow detailed instructions, comply with job rules, and respond to changes in a usual work setting. The ALJ's error was not harmless because if the ALJ had appropriately considered the opinion of Dr. Bhavsar, the ALJ could have reached a different disability determination. <u>See</u> <u>Stout v. Comm'r, Soc. Sec. Admin</u>., 454 F.3d 1050, 1056 (9th Cir. 2006); <u>see</u> <u>also</u> <u>Tomassetti v. Astrue</u>, 533 F.3d 1035, 1038 (finding harmless error exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation and citation omitted). Also, Dr. Bhavsar's opinion could have impacted the residual functional capacity at step four, where an ALJ must include "all of [a claimant's] medically determinable impairments," whether severe

or not. 20 C.F.R. § 404.1545(a)(2). Accordingly, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Motion on this issue.

## 2. <u>Adverse Credibility Determination</u>

### a. <u>Summary of Parties' Arguments</u>

Plaintiff argues that the ALJ failed to state "clear and convincing reasons for discounting his subjective complaints." Pl.'s Mot. at 20.  Plaintiff's first argument in support thereof is that "regarding both headaches and fibromyalgia the ALJ erred by simply recounting benign clinical findings from Plaintiff's physical examinations throughout the record to reject symptoms of two disorders which are characterized by a lack of objective examination findings." <u>Id.</u> at 21. Plaintiff's second argument in support thereof is that it is legal error to "reject[] Plaintiff's alleged symptoms of fibromyalgia solely because they were 'inconsistent with the objective medical evidence.'" <u>Id.</u> Rather, he argues that the ALJ must "consider the context of the record as a whole to determine the severity of Plaintiff's alleged pain." <u>Id.</u> Plaintiff argues that the record shows that Plaintiff consistently reported pain which was also observed by his treating physicians. <u>Id.</u> at 22.

Defendant argues that Plaintiff fails to establish any reason to overturn the ALJ's decision. Def.'s Mot. at 11. First, Defendant argues that the "ALJ found that while the record supported mental and physical functional limitations, it did not corroborate the disabling degree of limitations that Plaintiff alleged." <u>Id.</u> at 8. The Defendant states that "the ALJ found the weight of the evidence, medical opinions, and Plaintiff's treatment history – best comported with the residual range of functioning delineated in Plaintiff's RFC." <u>Id.</u>  The Defendant states that "these constituted specific and legitimate reasons supporting the ALJ's decision to partially discount Plaintiff's allegations." <u>Id.</u> Second, Defendant argues that the ALJ "properly found the medical-opinion evidence undermined Plaintiff's allegations." <u>Id.</u> at 10. Here, Defendant states that all three state-agency

physicians[2] who opined as to Plaintiff's physical functioning found that he was capable of performing a range of work consistent with his RFC." Id. Third, Defendant argues that the ALJ properly found that Plaintiff's treatment history was consistent with Plaintiff's RFC. Id. In support thereof, Defendant notes that Plaintiff "largely received minimal and sporadic treatment" for his allegations of disabling mental limitations. Id. Defendant further notes that Plaintiff's "treatment for physical impairments was similarly minimal and sporadic." Id. at 11.

### b. Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citations omitted). The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then "the ALJ can [only] reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." Id.; see also Garrison, 759 F.3d at 1014-15. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester, 81 F.3d at 834). The ALJ's

---

[2] The ALJ noted that he gave significant weight to the opinions of Dr. Lloyd Wiggins and Dr. Susan Moner because their opinions "regarding light limitations [were] reasonable and consistent with the medical evidence as a whole." AR at 35. The ALJ also discussed and assigned some weight to the opinion of Dr. Kenneth Stover because "his findings were consistent with the limited findings indicated in the objective medical record." Id. at 36.

findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas, 278 F.3d at 958.

Additionally, the Ninth Circuit has held that the "ALJ may not reject the claimant's statements regarding [his] limitations merely because they are not supported by objective evidence." See Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). To determine whether Plaintiff's testimony regarding the severity of his symptoms is credible the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." See Tomassetti, 533 F.3d at 1039.

### c. Analysis

The ALJ satisfied the first step of the analysis and determined that Plaintiff's impairment could reasonably have been expected to produce the pain alleged. AR at 32. This first step is not contested by either party. Here, the ALJ did not cite evidence of malingering and the Commissioner has not argued that there was evidence of malingering. Id. at 32-33; Def.'s Mot. at 8-11. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms. See Lingenfelter, 504 F.3d at 1036.

The ALJ identified two reasons for discounting Plaintiff's subjective complaints. AR at 32-33; First, the ALJ found that Plaintiff's subjective complaints for pain symptoms from "headaches, fibromyalgia, and neuropathic pain" were not supported by the "objective medical evidence." Id. Second, the ALJ found that Plaintiff's subjective complaints for his "psychiatric symptoms" "is not comparable to the frequency or extent of treatment sought by the claimant." Id. The Court will consider each reason individually.

### i. Plaintiff's Subjective Complaints for Pain Symptoms From "Headaches, Fibromyalgia, and Neuropathic Pain"

First, the ALJ found that Plaintiff's subjective complaints for pain symptoms from "headaches, fibromyalgia, and neuropathic pain" were not supported by the "objective medical evidence." Id. at 32-33. The ALJ stated that Plaintiff's allegations of his symptoms from these conditions "are inconsistent with the evidence in the case record." Id. at 32. The

ALJ further stated that although Plaintiff alleged pain from headaches, when physicians examined Plaintiff in regard to his alleged symptoms, the findings were "generally unremarkable." Id. at 33 (citing Ex. 3F, p. 35, 83-84; Ex. 6F, p. 51, Ex. 1F, p. 10-11).

The Court finds that the ALJ's conclusory findings are not sufficiently specific to explain why plaintiff's alleged pain limitations are not supported by the physical findings in the record. Substantial evidence in the record does not support the ALJ's conclusion. For example, the ALJ cited Exhibit 3F, pages 34 to 35, in support of his conclusion that Plaintiff's physical findings failed to support his subjective complaints. AR at 296-297. The ALJ summarized Plaintiff's medical note from Plaintiff's office visit with Dr. Bilbao on January 15, 2015 as follows: "[I]n January 2015, upon physical examination, he was pleasant and well-appearing, with no positive, objective physical findings reported." Id. at 33. Notably, the ALJ fails to note that in the same medical record, Dr. Bilbao stated that Plaintiff's reason for the visit was for his back pain and chronic migraine headaches. Id. at 296. Dr. Bilbao further noted that the patient experiences "daily headaches [that] are lasting 5-24 hours, pain in eyes, neck pain." Id. Dr. Bilbao stated that his chronic headaches "have been going on for years" and that the patient was requesting a referral to the neurologist. Id. She noted that she last saw Plaintiff on May 14, 2015 "for [the] same [chief complaints]." Id. Dr. Bilbao notes that she referred Plaintiff to a neurologist. Id. at 298. It is evident from the Court's review of the record that the ALJ selectively highlighted certain benign findings from Plaintiff's record, while ignoring others, which is not permitted. See Holohan, 246 F.3d at 1207.

Similarly, the ALJ summarized Plaintiff's medical note from his office visit on December 21, 2016 with Dr. Ramani Hami as follows: "In December 2016, the claimant presented for another neurology consultation with complaints of chronic migraines, but neurologic examination findings were unremarkable." AR at 33. Notwithstanding Plaintiff's neurologic findings, Dr. Hami noted that Plaintiff has a "migraine history" including "throbbing usually on the right side (usually starts with neck pain up to the front then back the neck), + light sensitivity, + sound sensitivity, sometimes nausea, visual aura

(has had visual distortion with more severe headaches); patient says he now has daily headaches that emanates from his neck up to head, feels band-like, this sensation is constant." Id. at 420. Dr. Hami further noted that the frequency of the headaches is "four times per month" and the duration is "72 hours." Id. Dr. Hami stated that Plaintiff has suffered from these headaches "since high school" and lists the therapies that Plaintiff has tried. Id. Dr. Hami noted in his "assessment" of Plaintiff that he "has PTSD and fibromyalgia that are certainly playing a role in patient's pain threshold." Id. at 422. Dr. Hami noted the plan for Plaintiff's medication regimen and also noted that he "will be going to acupuncture and biofeedback through pain management." Id.  It is unclear from the ALJ's order why a purported lack of Plaintiff's physical examination findings from Plaintiff's neurologic examination discredits Plaintiff's subjective complaints about his headaches. In sum, the Court finds that the ALJ failed to address the limitations reported by Plaintiff and specifically what medical evidence undermines Plaintiff's credibility as to the specific limitation(s).

To the extent the ALJ based his conclusion about Plaintiff's adverse credibility on Plaintiff's specific testimony from the hearing, the Court also finds that the ALJ failed to meet his burden. Id. at 32. The ALJ fails to identify the specific statements Plaintiff made that the ALJ decided were not credible, and thus does not provide the necessary information for meaningful judicial review. See Brown-Hunter v. Colvin, 804 F.3d 487, 492 (9th Cir. 2015) ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'") (citation omitted).  In the ALJ's written decision, in support of his adverse credibility finding of Plaintiff, he stated that the alleged severity of Plaintiff's pain symptoms was "inconsistent with the evidence in the case record." AR at 32. The ALJ stated "[f]or example, the claimant maintained he experiences incapacitating headaches on a daily basis, including migraines lasting up to 72 hours on a weekly basis." Id. (citing Testimony). The ALJ's vague reference to Plaintiff's statements are not specific

identifications of which statements are being discredited. Holohan, 246 F.3d at 1208 (9th Cir. 2001) (holding that "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). The ALJ fails to explain why the statements are not credible or to link them to parts of the record supporting his finding that the statements are not credible. On the contrary, Plaintiff's medical record dated December 21, 2016 corroborates that Plaintiff experiences headaches "four times per month" for a duration of "72 hours." AR at 420. Because the ALJ failed to properly identify the statements he found not credible and the specific evidence that undermines Plaintiff's specific subjective testimony, the Court is unable to evaluate the adequacy or legitimacy of the ALJ's findings.

With respect to Plaintiff's subjective complaints about fibromyalgia, a lack of objective medical evidence regarding Plaintiff's fibromyalgia pain is an insufficient basis to disregard Plaintiff's subjective complaints. See Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017). As the Court found in Revels:

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis. . . .

> Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia wax and wane, and that a person may have bad days and good days. In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a longitudinal record whenever possible.

Id. (internal quotations and citations omitted); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("The ALJ erred in discounting the opinions of Benecke's treating physicians, relying on his disbelief of Benecke's symptom testimony as well as his misunderstanding of fibromyalgia").

Here, the ALJ stated broadly that Plaintiff's "allegations regarding the severity of pain symptoms from fibromyalgia are inconsistent with the objective medical evidence as a whole." AR at 33. In support, the ALJ cited a few examples of what the ALJ stated were "some positive findings supporting a diagnosis and treatment for fibromyalgia (Exs. 3F, p. 70; 6F, p. 30)." Id. However, as set forth in Revels, a lack of objective medical evidence regarding Plaintiff's fibromyalgia pain is an insufficient basis to disregard Plaintiff's subjective complaints. Additionally, the Court's own review of the record reveals that there is objective medical evidence in the record to establish that Plaintiff suffered from debilitating pain from his fibromyalgia during the time period in issue. See, e.g., AR at 332 (on September 15, 2015, Plaintiff was treated for fibromyalgia with constant, aching pain, tiredness, difficulty sleeping, and abdominal pain); AR at 363 (on November 9, 2015, Plaintiff reported severe 10/10 pain in the sacrum, hips, and pelvis, such that he was barely able to stand up and use the bathroom); AR at 356-57 (on December 2, 2015, Plaintiff was administered injections to treat fibromyalgia pain and an examination revealed tenderness over the upper trapezius, the lumbar paraspinals, and glutei bilaterally); AR at 451 (on November 30, 2017, Plaintiff was treated for chronic pain and complained that carrying a gallon of milk for two minutes can trigger a flare of symptoms that lasts up to three days).

Accordingly, the Court finds that the ALJ failed to properly analyze Plaintiff's fibromyalgia-related symptoms pursuant to SSR 12-2P and Benecke. In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke. The failure to do so constitutes error.

/ / /

22

1

2

    ii.  <u>Plaintiff's Subjective Complaints about his Psychiatric Symptoms</u>

3

  Regarding Plaintiff's subjective complaints about his psychiatric symptoms, the ALJ

4 assigned little weight to Plaintiff's statements because "the frequency, or extent of mental

5 health treatment sought is not comparable to the degree of the claimant's subjective

6 complaints." AR at 34. The ALJ noted that from the onset date through December 2015,

7 "the record shows the claimant received only very limited mental health treatment,

8 consisting of psychotropic medications prescribed in April 2015 and November 2015 []

9 and some psychotherapy []." <u>Id.</u> The ALJ further noted that Plaintiff received only "limited

10 and intermittent mental health treatment between January 2017 and April 2017," and that

11 he did not present for medical treatment between November 2015 and December 2016. <u>Id.</u>

12 Inconsistent treatment is a sufficient basis to find that Plaintiff's subjective complaints are

13 not credible. <u>See</u> <u>Tommasetti</u>, 533 F.3d at 1039.

14   As an initial matter, the ALJ's evaluation of Plaintiff's mental health treatment is

15 inconsistent with the medical evidence in the record for the reasons set forth in the previous

16 section. <u>See</u>, <u>e.g.</u>, AR at 389-90; AR at 396; AR at 403; AR at 409-10; AR at 421-22; AR

17 at 430; AR at 440; AR at 444; AR at 451; AR at 454; AR at 482-83; AR at 489; AR at 491.

18   The ALJ's decision also fails to adequately consider Plaintiff's mental health

19 treatment from Vivian Coles. AR at 33-37. As set forth above, on December 2, 2015,

20 Vivian Coles, LPC, MA, wrote a letter explaining that she has treated Plaintiff for

21 psychotherapy since September 1, 2012 to the present. <u>Id.</u> at 350.  The ALJ noted Ms.

22 Cole's treatment letter in his opinion, and stated:

23    The undersigned gives some weight to the statements of Ms. Vivian Coles,
   but only to the extent that they support the claimant's diagnosis and history of

24    treatment for PTSD. However, since Ms. Coles did not provide a functional

25    assessment of the claimant's mental limitations, no further consideration is
   given to her statements.

26

27

28

Id. at 37. The Court finds that the ALJ's reasoning is not clear and convincing because Ms. Coles' statement contradicts the ALJ's finding that Plaintiff has significant gaps in his mental health treatment.

Further, even if Ms. Coles did not demonstrate that Plaintiff sought consistent mental health treatment, the Ninth Circuit has held that "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." Garrison, 759 F.3d at 1018 n.24; Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Finally, if the ALJ felt that he did not have enough information in the record from Ms. Coles to evaluate Plaintiff's credibility, he had a duty to develop the record.  Where a physician's report is insufficient to make a disability determination, the ALJ is required to recontact a doctor. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (holding an ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel.). As Ms. Coles did not provide any such functional assessment of the claimant's mental limitations, the ALJ could have obtained this information. See Tonapetyan, 242 F.3d at 1150; see also McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (holding that an ALJ must be "especially diligent" with this duty when the claimant is unrepresented).

Here, the ALJ did not provide clear and convincing reasons to reject Plaintiff's symptom testimony regarding his mental impairment. In sum, after reviewing the administrative record and the arguments submitted by both Parties, the Court finds that the ALJ's determination was not supported by clear and convincing reasons to reject Plaintiff's psychiatric symptom testimony.

### 3. **ALJ's RFC Finding at Step Four**

#### a. Summary of Parties' Arguments

Plaintiff argues that "the ALJ failed to include the work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations." Pl.'s Mot. at 20. Plaintiff claims that the "ALJ failed to properly consider Plaintiff's fibromyalgia pain as required by the regulations, and to account for his limitations due to his subjective pain in the RFC." Id. at 22. Plaintiff further argues that the ALJ also "ignored that there is no objective test to confirm the presence of a migraine disorder, and rejected Plaintiff's symptoms based upon a lack of physical findings." Id.  In sum, Plaintiff alleges that "the ALJ failed to set for[th] any clear reason for rejecting [Plaintiff's] alleged pain limitations and resulting physical limitations, and this error warrants remand for proper consideration of Plaintiff's pain and resulting functional limitations." Id. at 23.

Defendant argues that the evidence supports the "minimal level of cognitive and social functioning set forth in Plaintiff's RFC." Def.'s Mot. at 5-6. First, Defendant states that all three physicians who provided an opinion regarding Plaintiff's physical functioning "opined he was capable of performing a range of work consistent with his RFC." Id. at 10. Defendant also argues that the "ALJ properly found Plaintiff's treatment history was consistent with Plaintiff's RFC." Id. at 10. In sum, Defendant argues that Plaintiff does not explain how "his allegations of pain and receipt of treatment constituted medical findings compelling concrete functional limitations beyond his restrictive RFC." Id. at 11.

#### b. Relevant Law

The RFC is the maximum a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe and evaluate all of the relevant medical and other evidence, including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Only

limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the Vocational Expert. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

### c. <u>Analysis and Conclusion</u>

Here, because none of the reasons that the ALJ provides for rejecting Plaintiff's symptom statements were clear and convincing, the Court finds that the ALJ's rejection of Plaintiff's symptom statements was not supported by substantial evidence in the record. Moreover, because Plaintiff's statements and the evidence discussed above suggest that Plaintiff has greater limitations than the ALJ accounted for in the RFC, the Court finds that the ALJ's RFC and step four findings are not supported by the record because they do not account for all the functional limitations described in Plaintiff's testimony and the medical records. As such, the Court finds that the ALJ's decision is not supported by substantial evidence in the record.

### 4. **Remand Versus Award for Benefits**

The law is well established that the decision whether to remand for further proceedings or simply aware benefits is within the discretion of the Court. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989); <u>see</u> <u>also</u> <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional proceedings could remedy defects in the decision. <u>See</u>, <u>e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984; <u>Lewin</u>, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits for which the disabled plaintiff is entitled, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 710 (9th Cir. 1985).

Here, the Court has concluded that further administrative proceedings would serve a meaningful purpose to address the errors identified herein. Therefore, this Court

REVERSES the ALJ's decision and REMANDS for further proceedings to address the errors noted in this Order.

## VII.  <u>CONCLUSION</u>

For the reasons set forth above, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Cross-Motion for Summary Judgment be DENIED, and that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further administrative proceedings.

IT IS HEREBY ORDERED that any written objections to this Report and Recommendation must be filed with the Court and served on all parties on or before **November 2, 2020**. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties on or before **November 16, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  October 19, 2020

Honorable Linda Lopez
United States Magistrate Judge